```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

UNITED STATES OF AMERICA                                              PLAINTIFF

       v.           Civil No. 08-50006

JENNIFER MARIE HOOD                                                  DEFENDANT

**O R D E R**

Now on this 14th day of March, 2008, comes on for consideration and disposition defendant's **Motion to Suppress (Doc. 11)**, together with plaintiff's response thereto, and the Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

1. On March 6, 2008, the Court conducted a hearing on the motion at which it heard testimony and arguments from both plaintiff and defendant. Based upon that hearing and the pleadings and other matters before it, the Court now proceeds to issue its ruling on the motion.

2. Based upon the proof the Court heard, it finds that the following facts appear:

    (a) Detective Brett Hagan of the Washington County Sheriff's Office received information that Teresa Briggs, who was a suspect in a burglary and also had outstanding warrants pending against her for failure to appear, was at the apartment of her son, Richard Briggs.

    (b) Detective Hagan and Detective Robert Hendrix of the Springdale Police Department set up surveillance on the apartment

and observed a female exit the apartment and then return. Detective Hagan then began to approach the apartment and, as he made his way to the landing at the bottom of the stairs, he observed the defendant exit the apartment and then turn around and go back in the apartment.

      (c)    According to the defendant, she exited the apartment carrying the rifle at issue in this action wrapped in an afghan, carrying it in a way as to make it appear that she was carrying a baby. Defendant testified that when she saw Detective Hagan at the bottom of the stairs, she went back into the apartment and shut and locked the door while she hid the rifle in a closed sofa-bed.

      (d)    Detective Hagan knocked on the door of the apartment for several minutes until defendant finally answered the door. Whereupon, defendant and other individuals in the apartment -- Ms. Briggs and her boyfriend, Michael Dayberry – were instructed to exit the apartment.

When the three were outside the apartment, Detective Hendrix placed handcuffs on them for safety reasons and told them to stand and stay in a particular location outside the apartment. Detective Hagan and another officer went into the apartment to do a protective sweep. During the sweep, the officers discovered a rifle. According to the officers, the rifle was either on the

bed or on the floor by the bed, with an afghan over it but the barrel still visible.

Although defendant testified that the rifle was hidden in a closed sofa-bed, the Court credits the testimony of the police officers to the effect that it was either on the bed or on the floor by the bed.

(e) Detective Hendrix testified that he heard one of the officers say -- during the protective sweep -- that they had found a rifle. Upon hearing this, he said he turned to the three he had placed in handcuffs (defendant, Ms. Briggs, and Mr. Dayberry) and asked: "Who's gun is it?"

According to Detective Hendrix, he did not direct the question to any of the three in particular and no one responded immediately. He further testified that a moment or so later, the defendant asked if she could speak privately with him.

Detective Hendrix testified that he arranged for Ms. Briggs and Mr. Dayberry to be taken downstairs by another officer and he then took the defendant into the apartment. Detective Hendrix testified that he advised the defendant that she did not have to talk to him -- but he did not otherwise advise her of her rights under Miranda v. Arizona, 384 U.S. 436, 444 (1966).

The defendant then proceeded to inform Detective Hendrix that she had brought the rifle over to the apartment.

(f) Detective Hendrix acknowledged that, before he asked the question about to whom the rifle belonged -- or spoke with the defendant about it -- he had run a check on defendant's name and had cause to believe that she was a felon.

After Detective Hendrix's conversation with the defendant, he confirmed that she was on parole and that she was an absconder. He then placed her under arrest.

3. On January 9, 2008, an indictment was issued charging the defendant with being a felon in possession of a firearm. In the motion now before the Court, the defendant moves to suppress the statements she made to Detective Hendrix -- as well as the evidence of her possession of the rifle found in the apartment. The Court will address the weapon and the statements in turn.

4. <u>The Weapon</u> - Defendant moves, on various grounds, to suppress evidence concerning the rifle found in the apartment.

In response, the Government argues that the defendant cannot challenge the search which resulted in the discovery and seizure of the rifle, as she was merely a visitor to the apartment and had no expectation of privacy with respect to that apartment.

(a) To challenge the search, the defendant must demonstrate that she personally had an expectation of privacy in the apartment, and that this expectation was reasonable. <u>See</u> <u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998). A visitor usually lacks a rightful expectation of privacy when present in the home

of another unless the visitor stays overnight. See id. at 89-91 (cited in United States v. Sturgis, 238 F.3d 956, 958 (8th Cir. 2001)). Other factors considered in determining whether a visitor has a legitimate expectation of privacy include whether the visitor has a key and unencumbered access to the house, whether the visitor keeps any personal belongings there, and whether the visitor possesses the ability to exclude others from the house. See United States v. Nabors, 761 F.2d 465 (8th Cir. 1985).

(b)   At the suppression hearing, Richard Briggs testified that he rented and resided at the apartment in question and that he let Ms. Briggs, his mother, stay there the night before the events at issue took place, with the understanding that she was going to turn herself in to authorities the following day.

He further testified that he specifically instructed his mother that nobody other than herself and her boyfriend (Mr. Dayberry) were to be at the apartment.

Richard Briggs also testified that he did not know the defendant and did not know that his mother had invited her over to the apartment after he left for work that morning.

(c)   The Court credits Richard Briggs' testimony and, based on it, finds that the defendant had no privacy interest in the apartment.

Accordingly, it follows that defendant has no standing to challenge the search of the apartment or the seizure of the rifle

and her **Motion to Suppress (Doc. 11)** will be **denied** with respect to the rifle.

5.   The Defendant's Statements - The defendant argues that the statements she made to Detective Hendrix are inadmissible because she had not been advised of her Miranda rights.

The government resists this contention, claiming that defendant's statements are properly admissible against her.

The protections of Miranda apply to custodial interrogations. See United States v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007). The Court, therefore, will examine the proof to determine whether the defendant was in custody and whether she was interrogated.

(a)   **Was the defendant in custody?** -- A custodial interrogation is defined as "'questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom in any significant way.'" Id. (internal citation omitted)

In determining whether a suspect is in custody, the Court considers the totality of the circumstances and determines whether a reasonable person in the suspect's position would consider his "freedom of movement restricted to the degree associated with formal arrest." United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004).

Factors relevant to a determination of whether a person is, indeed, in custody include:

* whether the suspect was informed that she was free to leave and that answering was voluntary;
* whether the suspect possessed freedom of movement;
* whether the suspect initiated contact or voluntarily acquiesced;
* whether the atmosphere was police dominated; and
* whether the suspect was placed under arrest at the end of questioning.

Flores-Sandoval, 474 F.3d at 1146-47.

Here, there is no indication that, prior to talking with defendant, Detective Hendrix told her she was free to leave or that answering any question he might ask would be on a voluntary basis. While he did advise the defendant that she did not have to speak to him, this was done only after he had already asked who owned the rifle.

The facts show that, since she had been immediately handcuffed at the start of the incident and told to stand and stay in a particular location, defendant did not have freedom of movement.

The facts also indicate that the defendant did not initiate the conversation -- instead, Detective Hendrix did so by asking

"Who's gun is it?," after which defendant then acquiesced in the conversation by asking to speak with Detective Hendrix privately.

The facts and circumstances show that the atmosphere was police dominated because, among other things, of the concern for officers' safety.

Finally, the facts show that defendant was placed under arrest at the end of the questioning.

In view of the foregoing observations, the Court believes that the totality of the circumstances show that the defendant was in custody at the time she made the statements to Detective Hendrix.

(b)  **Was the defendant interrogated?** -- Voluntary statements that are not in response to interrogation are admissible without the giving of Miranda warnings.  See United States v. Tail, 459 F.3d 854, 857 (8th Cir. 2006).

"Interrogation" includes express questioning, and it also extends to "'words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Id. (internal citation omitted)

Detective Hendrix testified that he had reason to believe that the defendant was a felon *before* he asked who owned the rifle.  That being the case, the Court believes that he should

have known that his question was reasonably likely to elicit an incriminating response.

The fact that Detective Hendrix did not specifically direct his question to the defendant but, rather, apparently directed it to, and asked it of, all three suspects does not detract from the soundness of that conclusion. See <u>United States v. Reynolds</u>, 526 F. Supp.2d 1330, 1345 (N.D. Ga. 2007) (officer's question to two suspects about who owned the rifle found during search of residence was aimed at eliciting incriminating information, and, therefore, constituted interrogation).

In addition and as already noted, the defendant's statements regarding the rifle were not voluntary and spontaneous -- but, rather, were clearly prompted by, and made in response to, Detective Hendrix's initial question about who owned the rifle.

(c)  Based on the foregoing, the Court concludes that the defendant's statements regarding the rifle were made during a custodial interrogation.

It follows that Detective Hendrix's failure to advise the defendant of her <u>Miranda</u> rights prior to commencing the interrogation, renders these statements inadmissible.

Accordingly, defendant's **Motion to Suppress (Doc. 11)** will be **granted** with regard to the statements.

**IT IS, THEREFORE, ORDERED** that the defendant's **Motion to Suppress (Doc. 11)** is **DENIED** with regard to the weapon at issue, but **GRANTED** with regard to the statements at issue.

The parties are directed to advise the Court within five days of the date of this order whether they intend to proceed to trial on the indictment against the defendant.

**IT IS SO ORDERED.**

<pre>
                              /S/JIMM LARRY HENDREN
                              JIMM LARRY HENDREN
                              UNITED STATES DISTRICT JUDGE
</pre>